Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| ALTAMIRA HOLDINGS, LLC<br><br>Parte Peticionaria<br><br>v.<br><br>RAYFRAN, INC.; FRANCISCO JOSÉ RIVERA FERNÁNDEZ POR SÍ Y COMO MIEMBRO Y ALBACEA DE LA SUCESIÓN DE MARIBEL SÁNCHEZ RODRÍGUEZ, COMO FIDUCIARIO Y FIDEICOMISARIO DEL FIDEICOMISO TESTAMENTARIO RIVERA SÁNCHEZ; LA SUCESIÓN DE MARIBEL SÁNCHEZ RODRÍGUEZ COMPUESTA POR FRANCISCO JOSÉ RIVERA SÁNCHEZ, JOSÉ ENRIQUE RIVERA SÁNCHEZ Y FRANCISCO JOSÉ RIVERA FERNÁNDEZ EN LA CUOTA VIUDAL USUFRUCTUARIA; FULANO(A) DE TAL Y SUTANO(A) DE TAL COMO POSIBLES HEREDEROS DESCONOCIDOS DE MARIBEL SÁNCHEZ RODRÍGUEZ<br><br>Parte Recurrida | TA2026CE00383 | Certiorari procedente del Tribunal de Primera Instancia, Sala de Guaynabo<br><br>Caso Núm.: D2CD2017-0008<br><br>Sala: 0201<br><br>Sobre: Cobro de Dinero y Ejecución de Hipoteca |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 20 de mayo de 2026.

Comparece ante *nos* Altamira Holdings, LLC (Altamira o peticionaria) y nos solicita que revisemos una *Resolución* emitida el 4 de febrero de 2026 y notificada el 6 de febrero de 2026, por el

Tribunal de Primera Instancia (TPI o foro primario), Sala Superior de Guaynabo. Mediante dicho dictamen, el foro primario dejó sin efecto la *Sentencia* emitida el 7 de mayo de 2025, debido a que la misma no advino final y firmo por un defecto en la notificación.

Por los fundamentos antes expuestos, *expedimos* el auto de *certiorari* y *revocamos* la *Resolución* recurrida.

**I.**

El 9 de enero de 2017, Banco Santander de Puerto Rico (Santander) incoó una *Demanda* sobre cobro de dinero y ejecución de hipoteca en contra de Francisco José Rivera Fernández (Rivera Fernández), la Sucesión de Maribel Sánchez Rodríguez (Sucesión) (en conjunto, los recurridos) y el Centro de Recaudación de Ingresos Municipales (CRIM). A grandes rasgos, alegó que la parte recurrida le adeuda $1,788,052.00 de principal más 5.25% anual desde el 1 de mayo de 2016 hasta el saldo total de la obligación y cargos por demora equivalentes a 5% de la suma de aquellos pagos con atrasos en exceso de quince (15) días calendario de la fecha de vencimiento.[1]

Posteriormente, el 21 de junio de 2019, Santander presentó una *Demanda Enmendada* mediante la cual se incluyó a Rayfran, Inc. (Rayfran) como codemandado, ya que surgía como titular registral. Así las cosas, el 8 de octubre de 2019, la parte recurrida presentó una *Contestación a Demanda Enmendada y Reconvención.* El 25 de febrero de 2020, el TPI emitió una *Sentencia Parcial* mediante la cual, entre otros, declaró *Ha Lugar* la *Demanda Enmendada* y desestimó la *Reconvención.* Dicho dictamen fue notificado a las partes el 16 de julio de 2020.

Luego de varios incidentes procesales, innecesarios pormenorizar, el 17 de enero de 2021, Santander y Luna Residential

---

[1] Además, adujo que la parte recurrida le adeudaba $217,500.00 para costas, gastos y honorarios de abogado, según pactados y $217,500.00 para cubrir cualquier otro adelanto que se hiciera en virtud de la Escritura de Hipoteca y una suma de $217,500.00 para cubrir intereses adicionales a los garantizados por ley.

II, LLC. (Luna Residential) presentaron una *Solicitud Conjunta de Sustitución de Parte Demandante*. Entretanto, el 18 de diciembre de 2024, Luna Residential presentó una *Moción de Sentencia Sumaria*. En vista de ello, el 17 de enero de 2024, la parte recurrida presentó una *Oposición a la Solicitud de Sentencia Sumaria*. Consecuentemente, el 7 de mayo de 2025, el foro primario emitió *Sentencia,* notificada el 23 de mayo de 2025. En sintonía con esto, el 25 de junio de 2025, Luna Residential presentó su *Solicitud de Ejecución de Sentencia.*

Asimismo, el 23 de julio de 2025, Luna Residential presentó una *Solicitud Conjunta de Sustitución de Parte Demandante* mediante la cual informó la cesión del crédito a Estrella Homes II, LLC. (Estrella Homes). Así pues, el 29 de julio de 2025, el foro primario emitió una *Resolución* mediante la cual indicó que la *Sentencia* no se había notificado a Rayfran, ni por edicto a Fulano(a) de Tal y Sutano(a) de Tal como posibles herederos desconocidos de Maribel Sánchez Rodríguez, por lo que la *Sentencia* no ha advenido final y firme. Por lo cual, declaró *No Ha Lugar* la *Solicitud de Ejecución de Sentencia.*

El 11 de agosto de 2025, la Estrella Homes presentó una *Solicitud de Orden Para Que Secretaría Notifique Nuevamente la Sentencia y Otros Extremos*. Allí, sostuvo que, en efecto, Secretaría no notificó la *Sentencia* a Rayfran ni al CRIM. Por lo cual, solicitó que Secretaría notificara la *Sentencia* nuevamente e incluyera a Rayfran y al CRIM. Subsiguientemente, el 19 de agosto de 2025, los recurridos presentaron una *Moción en Cumplimiento de Orden.* Mediante esta, solicitaron que Estrella Homes les mostrara el original del pagaré hipotecario para inspeccionarle y saber si realmente era la parte con legitimación activa para sustituirse como demandante. Además, solicitó que se le proveyera copia del contrato

de cesión de crédito entre Luna Residential y Estrella Homes, para poder levantar cualquier defensa a su favor.

Ante ello, el 27 de agosto de 2025, Estrella Homes presentó una *Moción en Cumplimiento de Orden*. En la misma, afirmó que es tenedora de buena fe del pagaré en cuestión, contra quien no puede invocarse la rescisión de la negociación, ni recuperarse el instrumento negociable o su producto. Asimismo, expresó no tener reparos en coordinar la inspección del pagaré original.

El 19 de septiembre de 2025, Estrella Homes presentó una *Moción Reiterando Solicitud de Orden Para Que Secretaría Notifique Nuevamente la Sentencia [...]*. Acaecidos varios incidentes procesales, el 2 de diciembre de 2025, Estrella Homes presentó una *Moción Conjunta de Renuncia y Asunción de Representación Legal y Solicitando Sustitución de Parte Demandante*. En la misma, informó que el crédito había sido transferido a Altamira Holdings, LLC. (peticionaria).

Oportunamente, el 4 de febrero de 2026, se llevó a cabo una Vista mediante la cual la parte recurrida inspeccionó el pagaré original con sus endosos. En consecuencia, el foro primario autorizó la sustitución de parte y el relevo de la representación legal. Así, ese mismo día, el TPI emitió una *Resolución*, notificada el 6 de febrero de 2026, mediante la cual dejó sin efecto la *Sentencia* emitida el 7 de mayo de 2025, debido a que la misma no advino final y firme por un defecto en la notificación. Asimismo, dispuso que: "[t]ratándose de un litigio que preserva su vigencia, sin dictamen que goce de finalidad y firmeza, resulta apropiado dar cabida a los planteamientos propios de la cesión de interés durante la vigencia de un litigio".

Inconforme, el 20 de febrero de 2026, la parte peticionaria presentó una *Reconsideración de Resolución*. En respuesta, el 23 de febrero de 2026, notificada el 27 de febrero de 2026, el foro primario

emitió una *Resolución* declarando *No Ha Lugar* la solicitud de reconsideración.

Inconforme aun, el 29 de marzo de 2026, la parte peticionaria compareció ante *nos* mediante un recurso de *Certiorari* y alegó la comisión del siguiente error:

> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DEJAR SIN EFECTO LA SENTENCIA DICTADA BASÁNDOSE EN QUE LA MISMA NO ERA FINAL Y FIRME DEBIDO A UN ERROR EN LA NOTIFICACIÓN DE LA MISMA POR PARTE DE SECRETARÍA, BAJO LA PREMISA, ADEMÁS, QUE, DEBIDO A LA CESIÓN DEL CRÉDITO, LA PARTE DEMANDADA-RECURRIDA, TIENE DERECHO A LEVANTAR NUEVAS DEFENSAS AÚN Y CUANDO SE HUBIESE "ALLANADO" AL DICTAMEN DE SENTENCIA.**

El 20 de abril de 2026, la parte recurrida compareció mediante un *Alegato en Oposición a Certiorari*. Contando con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

## II.

### A. *Certiorari*

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023). Véase, además, *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, 205 DPR 163 (2020); *Pueblo v. Díaz de León*, 176 DPR 913 (2009). En particular, es un recurso mediante el cual se solicita la corrección de un error cometido por un foro inferior. *Torres González v. Zaragoza Meléndez, supra*. Así pues, la determinación de expedir o denegar un recurso de *certiorari* está enmarcada en la discreción judicial. *800 Ponce de León v. AIG, supra*. Es decir, la característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023). No

obstante, la discreción judicial para expedir o no el auto de *certiorari* solicitado no ocurre en un vacío ni en ausencia de unos parámetros. *Torres González v. Zaragoza Meléndez, supra.*

A esos efectos, la Regla 52.1 de Procedimiento Civil (32 LPRA Ap. V) limita la autoridad de este Tribunal de Apelaciones para revisar las órdenes y resoluciones interlocutorias que dictan los tribunales de instancia por medio del recurso discrecional del *certiorari.* Véase, *Scotiabank v. ZAF Corp.,* 202 DPR 478 (2019). En lo pertinente, la precitada disposición reglamentaria, *supra,* dispone que:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia, al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Si ninguno de esos elementos está presente en la petición ante la consideración del Tribunal, procede abstenerse de expedir el auto, de manera que se continúen los procedimientos del caso, sin mayor dilación, ante el Tribunal de Primera Instancia. *García v. Asociación,* 165 DPR 311 (2005); *Meléndez Vega v. Caribbean Intl. News,* 151 DPR 649 (2000); *Lluch v. España Service Sta.,* 117 DPR 729 (1986).

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari. Torres González v. Zaragoza Meléndez, supra.* En

lo pertinente, la precitada disposición reglamentaria dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari,* o de una orden de mostrar causa:
>
> A.  Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
>
> B.  Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C.  Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D.  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E.  Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F.  Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G.  Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Nótese que, distinto al recurso de apelación, el auto de *certiorari,* por ser un recurso discrecional, debemos utilizarlo con cautela y por razones de peso. *Pueblo v. Díaz de León, supra.*

Ahora bien, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. *Pueblo v. Rivera Santiago,* 176 DPR 559 (2009); *García v. Padró,* 165 DPR 324 (2005). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". *Pueblo v. Ortega Santiago,* 125 DPR 203 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. *BPPR v. SLG Gómez-López, supra.* Véase,

además, *Pueblo v. Rivera Santiago, supra*; *S.L.G. Flores, Jiménez v. Colberg,* 173 DPR 843 (2008).

### B. Notificación

La Regla 65 de Procedimiento Civil (32 LPRA Ap. V) regula la manera en que la Secretaría habrá de notificar las órdenes, resoluciones y sentencias que emita el foro de instancia. Así, la Regla 65.3 (a) de Procedimiento Civil, *supra,* dispone, entre otras cosas, que, inmediatamente después de archivarse en autos copia de la notificación del registro y archivo de una orden, resolución o sentencia, el Secretario o la Secretaria notificará tal archivo en la misma fecha a todas las partes que hayan comparecido en el pleito en la forma preceptuada en la Regla 67. Además, la precitada regla dispone que "[e]l depósito de la notificación en el correo será aviso suficiente a todos los fines para los cuales estas reglas requieran una notificación del archivo en autos de una orden, resolución o sentencia".

Asimismo, el inciso (b) de la Regla 65.3 de Procedimiento Civil, *supra,* establece que el Secretario o la Secretaria notificará a la última dirección que se haya consignado en el expediente por la parte que se autorrepresenta o a la dirección del abogado o abogada que surge del registro del Tribunal Supremo para recibir notificaciones, en cumplimiento con la Regla 9, toda orden, resolución o sentencia que de acuerdo con sus términos deba notificarse a las partes que hayan comparecido en el pleito.

Por su parte, la Regla 67.1 de Procedimiento Civil (32 LPRA Ap. V), establece que se notificará a todas las partes toda orden emitida por el tribunal y todo escrito presentado por las partes. La notificación se efectuará el mismo día en que se emita la orden o se presente el escrito. *Íd.*

Ahora bien, a tenor con las disposiciones antes citadas, nuestro máximo Foro ha interpretado que el término para acudir en

alzada en un caso civil, tanto de una resolución interlocutoria como de una sentencia final, no comienza a transcurrir si el tribunal deja de notificar dicho dictamen a alguna de las partes. *Sánchez Torres v. Hospital Dr. Pila*, 158 DPR 255 (2002). Es decir, para que se activen y comiencen a transcurrir los términos jurisdiccionales o de cumplimiento estricto para presentar una moción de reconsideración o un *certiorari* para que el tribunal apelativo revise una resolución u orden interlocutoria, es necesario que la notificación de la resolución u orden interlocutoria se haya hecho correctamente. Íd.

Así, para que un dictamen judicial adquiera validez legal no solo tiene que ser emitido, sino que también tiene que ser debidamente notificado. *Caro v. Cardona*, 158 DPR 592 (2003). Ello pues adjudicarle efectos procesales a una determinación judicial no notificada trastocaría el andamiaje procesal y socavaría los cimientos del debido proceso de ley. *Íd.* Véase, además, *Rodríguez Mora v. García Llorens*, 147 DPR 305 (1998).

**III.**

En el caso de autos, la parte peticionaria aduce que erró el TPI al dejar sin efecto la *Sentencia* dictada basándose en que la misma no era final y firme debido a un error en la notificación de la misma por parte de Secretaría, bajo la premisa, además, que, debido a la cesión del crédito, la parte demandada-recurrida, tiene derecho a levantar nuevas defensas aun cuando se hubiese allanado al dictamen de *Sentencia*.

Tras evaluar detenidamente el recurso presentado por la parte peticionaria, y luego de una revisión de la totalidad del expediente ante *nos*, es nuestra apreciación que el foro primario erró al dejar sin efecto la *Sentencia*.

Ciertamente, la *Sentencia* emitida el 7 de mayo de 2025, no goza de finalidad y firmeza, pues no fue notificada a todas las partes

según establece la Regla 65.3 (a) de Procedimiento Civil, *supra.* Sin embargo, surge del expediente ante *nos* que el 4 de febrero de 2026, el foro primario celebró una Vista. En la misma, se presentó el pagaré original y copia del nuevo endoso a favor de Altamira. Así, la parte apelada tuvo la oportunidad de inspeccionar el pagaré con todos sus endosos y el TPI autorizó la sustitución de parte.

Así pues, al realizarse la sustitución de parte y la revisión del pagaré, derecho que tiene la parte apelada, procedía que el foro primario ordenara a Secretaria a que notificara nuevamente la *Sentencia* a todas las partes. Es decir, el foro primario estaba imposibilitado, en esa etapa de los procedimientos, de concederle un término a la parte apelada para presentar una alegación responsiva enmendada y reabrir el descubrimiento de prueba.

**IV.**

Por los fundamentos antes expuestos, *expedimos* el auto de *certiorari* y *revocamos* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones